Our next case is Wright Manufacturing v. The Toro Company. When we perform an obviousness analysis, it's not simply a matter of trying to figure out whether each of the elements is somewhere in the prior arc. There's got to be some reason to combine them. They actually have to work in the proposed combination. You can't have art that teaches away. You have to look at these issues when you're determining whether something is obvious or not. You have to take a look at whether, well, would this alleged combination, would it work? Would one of these key components that I have to get in here? Does your view is that when you combine two pieces of prior art, that every element in one has to work in every element of two? Or is it just that you can look to the second piece of prior art and say, here are some good things that it's obvious to use in this piece, some of them we won't use? In this particular case, the rejection and what the PTAB affirmed was taking Busboom's HOC system, which I think was like five elements, and said it would have been obvious to put that in the base references modified by Cox or Musgrave. Those five elements, including the most important one, the control arm, those five elements pretty much need to be able to work and be operative in there. The control arm especially, because that's a key element in the claim. Here, it is important whether elements would work in the proposed combination, especially a key element in the claim. It's important whether there's a reason to make the combination. It's important whether a particular element performs its intended art-recognized function in the combination. The PTAB didn't do all these things. So the prior art here, the way I read this, the Wright 138 patent and the Velke 031 patent, which were both Wright inventions or Wright patents, so that's something that Mr. Wright had in his possession. And then to use the height adjustment, the HOC height adjustment of the Busboom, the 033 patent. It seems to me that making that combination is not too big of a leap. Well, all three of those references were discussed in the background section of the specification of our patent. And it's not just that combination. That's what Torja was saying. Oh, it's just that combination. That's not true. What happens here is there are six references that were used in this combination. Not two. Six. Six way 103 we're dealing with here. So what happens? The examiner and the board, you have a base reference. Let's take Velke 031 or Wright 138. It doesn't matter. You have a base reference. The claim requires that you have a specific, very unusual type of deck lift system. And that's a deck lift system where the cutter deck, the engine deck, and the engine all go up and down together as a unit. That's a very unusual deck lift system. At the time of this invention, the usual deck lift systems didn't do that. The typical deck lift systems were like in bus boom where the engine and the engine deck were stationary and the cutter deck would move up and down. That was the typical deck lift system. So the claim requires a very unusual, specific type of deck lift system. Cutter deck, engine deck, and engine all move up and down together as a unit. The base references don't have that. So the first thing the examiner and the board had to do... So why isn't adding the HOC adjustment of the 033 pattern with the Wright 138 and the Velke 031 pattern? Why wouldn't that achieve what you're saying where you have the deck, the cutter deck, and the engine moving up and down at the same time? Because in the bus boom reference, the engine deck and the engine are stationary. And the mower deck moves up and down. And it's dangling loosely by chains. It swings all over the place. If you take the HOC system... But why can't you just get the bolts that are holding the chains and move the cutter deck up and just bolt that on and you're good to go? If you took that system and put it in the Wright 38, there'd be nothing to hang the mower deck from. You have to have something to suspend the chains from. In bus boom, bus boom has stationary engine deck, stationary engine. It's hanging the mower deck below that with the chains. And that's why you need the control arm. Because the mower deck is hung loosely down there with these chains. In Wright, there's no lift system. There's no way to lift anything up and down relative to one another. If you're going to take the HOC system from bus boom and put it in Wright, you're going to do what bus boom did. Which is use that lever to lift the cutter deck relative to the engine and the engine deck. That's what bus boom did. If you're going to do a combination, that's what you're going to do. The examiner and the board recognize you can't just do that. You need some teaching that gives you this, you have to lift them all up and down together at one time. The engine deck, the engine, and the cutter deck. That's why they cited Cox and Musgrave. That's why the examiner did. That's why the board did. They had to. So they take the base reference, say it would have been obvious to move all three up and down together like in Cox and Musgrave. Again, that's an unusual feature. Then they had to say, well, let's take the HOC system from bus boom and put it in there. Well, the problem is the HOC system of bus boom won't work. It will perform no function at all if you put it in the system of the base reference modified by Cox or Musgrave. Because in Cox and Musgrave, the whole system that enables the three to move up and down together as a unit affixes the cutter deck to the frame and the engine deck. There's nothing to stabilize. There's nothing hanging loosely to stabilize. There's nothing that needs stabilization. To put a control arm between two rigidly attached pieces makes no sense. There's nothing to stabilize. That control arm would serve absolutely no function at all in the alleged combination. We argued this until we were blue in the face below, and the board didn't address or explain what function I could possibly perform in this alleged combination. So there's error simply because there are two levels of error here. One level of error is the invention would not have been obvious because you wouldn't add something into a proposed combination where it would serve no purpose. It would perform no function. It wouldn't be operable. Your point, Mr. Rowe, is that the control arm of bus boom wouldn't work in the combination you've described right with Cox and Musgrave added on because of the fact that the whole unit would move up and down. You wouldn't have change. Is that the point? If you modify the base reference so that all three move up and down together as in Cox or Musgrave, which is what the rejection is, then there's no uncontrolled movement of the lower deck. Because you don't have the change suspending the cutting piece. Right. There's nothing loosely dangling there. They're connected by bolts. In Cox, the deck that goes up and down is affixed to the rear axle. It's impossible for it to move forward or rearward. There's absolutely no reason why you would ever put a control arm in there to control that movement where such movement is impossible. In Musgrave, it's got bolts in the slots that we have in the pictures in the brief. Those bolts in those slots specifically address that movement. The control arm wouldn't do anything. It's impossible for the control arm to perform any function if you put it in either of those alleged modifications. First level of error here is the invention would not have been obvious because there's simply no reason to do it for the reasons we discussed. You seem to be arguing that a person with skill in the art is limited in how they view the prior art. That you must have a perfect fit. Get A, B, and C, and you perfectly end up with D. It seems to me you're skipping that a person with skill in the art is permitted to combine and add elements that are practical in order to make things fit. There's no question, Your Honor, that a person of skill in the art doesn't have his or her hand on top. So why wouldn't a person with skill in the art take Bush Boom and combine it with Wright and Belkey and simply add a structure for which to hang the HOC adjustment mechanism? That's not what the rejection is. The rejection is you modify the base reference as in Cox or Musgrave to get all three to move up together, up and down together. And then you put Bush Boom's HOC system in there. That's what we dealt with below. That was the rejection. I think there were proposed rejections of Wright just in view of Bush Boom. The examiner did not adopt them. The PTO did not use those rejections. I think that was in the original re-exam request. And the other error here, Your Honor, is the PTAB could not have conducted a proper obviousness analysis without dealing with these issues that we raised. I believe I'm in my rebuttal time. Yes, you've got nine seconds, but I think you're good. Thank you, Your Honor. Please, the Court. My name is Rachel Huey, and I represent the appellee, the Toro Company. I'd like to start by responding to the first question that Judge Hughes raised. The test is well settled. The test is not whether the features of a secondary reference must be bodily incorporated into the first reference. That was, as one example, the Keller case we cited in our brief. And the references do not have to be combinable without change. That's, again, the Snead case we decided. And, indeed, the number of references is irrelevant. Again, those are the Gorman and Kansas Jack cases we cited. What the Court looks at, and what I think the panel has already recognized, is what would a person of ordinary skill in the art know? And here, the examiner and the board were correct that the reexamined patents ensued were obvious in view of rights-owned... Counsel, before you go further, and I want you to come back to that point, you raise an argument of jurisdiction. Are you rejecting that at this point? No, we think there is a potential jurisdictional defect in this case. What's the basis for that? I mean, I looked into that, and the type of appeal from a board decision seems very unusual to me, in that it seems to give the director the power to control with the floor of when the appeal can be filed and how it can be filed. Yes, so the... In normal, I'm going to call them normal, probably what we've seen more traditionally, civil appeals, Federal Rule of Appellate Procedure 4 controls 60 days filed in the district court. For appeals from agency decisions, you have Federal Rule of Appellate Procedure 15, or for PTO decisions, Federal Circuit Rule 15. And they basically say, do what the director says to do. They don't give a time limit. Well, that rule doesn't come from... I mean, that's not... The FRAP isn't the rule that provides for the right of appeal. It's the statute. Exactly, exactly. But when you're looking at... But the statute gives the director fairly broad discretion. I mean, just to cut to the chase. Yes. It seems to me you're arguing that they didn't comply with the regulations that the director promulgated, but the director wasn't required to promulgate those regulations. I mean, in that certain aspect. And so all that really matters for the director is that it thinks it got the appeal in a timely fashion, isn't it? I would agree with you that the director didn't have to promulgate the regulations, but once it did, those are the rules that need to be followed. And so what happened here is... But there's all kinds of provisions in the regulations that allow the director to waive the time limit for good cause and the like. So at the end of the day, if the director thought this appeal is timely filed, under this statute, which seems, like I say, very unique, it seems like it gives the director the authority to make that call. So I don't know why we would ever second-guess that. Sure. I mean, and I think those are all very good points. The concern, of course, is if the rules say a notice of appeal has to be filed in 63 days, which is what the CFR says, and someone files it in 80 days, and the director says, whatever, fine, that's a jurisdictional defect that occurred, and this court would say... ...for allowing this late filing, and then we'd be done, right? And that's a good point. If the director had said... Well, what about, as in this situation, where the PTO confirmed that Wright's notices were properly filed? Sure. Well, we know what happened in that case. We know that Wright did file electronically in the PTO EFS. I mean, the point is that the PTO has acknowledged that the procedures were followed, and there's jurisdiction there as far as the PTO is concerned. As far as timely filing before this court, that happens. And you still raise the appeal in your red brief, and it's a little bit troubling to get it at that point and to have it on the basis that you make it. I mean, you want to supply an argument that's not accepted by the PTO, and it's contrary to our own filing requirements. So, we actually raised it in a motion right away. We knew there was a potential jurisdictional defect. And we reserved it until this panel was prepared. That's right. All right. Why don't you get back to the merits, then? Okay. Well, thank you, Your Honor. Yeah, so the board and the examiner in this case properly found that the reexamined patents were obvious based on the Wright's own mower patents to Velke or Wright in combination with the height-of-cut adjustment mechanism in Bussboom. And the reality here is that Wright doesn't really challenge the board or examiner's factual findings regarding the scope and content of the prior art or offer any secondary considerations. Instead, Wright's appeal here is a very narrow one based on a purposeful misapprehension of the actual rejection. Keep in mind, the examiner and the board did not find that the combination was obvious because of that control arm alone. What the examiner found and the board affirmed was that the combination of that entire height-of-cut adjustment mechanism in Bussboom would have been obvious when you put it in those standing mowers. What's your response to Mr. Roa's argument that the Bussboom control arm would not work when you add on to the Wright base, if you will, the attachment of the motor and the cutting platform together? Sure. So again, that's a suggestion that the control arm alone is a disembodied separate from the rest of the height-of-cut adjustment mechanism. But as the examiner said and the board affirmed, the height-of-cut adjustment mechanism includes chains. So when you would take the entire height-of-cut adjustment mechanism, that concept, chains, control arm, the bell cranks, the deck suspension chains, the springs, the adjustment handle, the height control pin, you'd move all of that over. And then you would have uncontrolled movement because you have chains. And then you would have a control arm. So the suggestion that the control arm would serve no purpose is if you didn't have the entire height-of-cut adjustment mechanism, which is not an accurate depiction of what actually occurred below. Wright's challenge to the board's obvious determination is based on a straw man. When the actual record is reviewed, you can see that the board and the examiner were correct. Their findings were not only supported by substantial evidence but are absolutely correct. And we think this court should affirm the obviousness determination. Are there any further questions? No. That's fine. Thank you. Thank you. Mr. Ernie, you have five minutes. Thank you, Your Honor. Your Honor asked earlier, what about this combination of just Wright with Busboo and not worrying about Cox and Hale? And if you look at A143, Toro, that was their first ground proposed for examination at A143. It was Wright 138 in view of Busboo and adding the Hale references to change the length of the control arm. The examiner did not adopt that proposed projection. And Velke, that's what I was talking about. Let's see. Velke. Velke is that one where you can raise and lower but it's very cumbersome to do so. Velke is the one where the engine deck is bolted to the cutter deck and there's no frame. So there's actually, it would be pretty much impossible to combine Busboo with Velke because in Velke, it's required that the cutter deck be bolted to the engine deck. There is no separate frame. The engine deck functions as the frame. Why wouldn't a procedure say, look, all I need to do here is just add a frame or a brace and bolt this on? Add a frame? Yes. Well, Velke 031 says that the engine deck is the frame. Velke already has a frame. You wouldn't add a frame to Velke. You're saying that you can't move a Busboo up because there's nothing there to connect it to. I'm saying in Velke 031, Your Honor, there already is a frame. It's called a tractor frame. It's part of the engine deck structure. You would not add another, there's no reason to add yet another frame to Velke 031. Why can't you then connect the height adjustment to that frame? Because in Busboo, the height adjustment takes a frame and an engine deck and an engine and then lifts the mower deck relative to them. There's chains that loosely dangle the engine deck. You have the springs, the chains, the control arm. None of them would work when in the base reference Velke, there's a rigid, bolted connection between the frame, engine deck, and cutter deck. There's no possible movement between any of those things. The wheels in Velke are connected to the engine deck. You cannot simply add a frame over that and lift everything up and down because the wheels would be moving up and down with it. It wouldn't work. That's all I have, Your Honor. Okay. Thank you very much.